# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| DANIELLE JENNINGS, | * | No. 16-779V |
| | * | Special Master Christian J. Moran |
| Petitioner, | * | |
| | * | Filed: January 22, 2021 |
| v. | * | Reissued: April 23, 2021 |
| | * | |
| SECRETARY OF HEALTH | * | attorneys' fees and costs, reasonable |
| AND HUMAN SERVICES, | * | basis, expert's hourly rate |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * *

Scott W. Rooney, Nemes, Rooney P.C., Farmington Hills, MI, for petitioner;
Darryl Wishard, U.S. Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[*]

Danielle Jennings sought an award through the National Childhood Vaccine Injury Compensation Program (the "Vaccine Act"), 42 U.S.C. § 300aa—10 to 34 (2012). She alleged that a human papillomavirus ("HPV") vaccine she received caused her to develop various conditions, including asthma/breathing problems. Pet., filed June 30, 2016. Ms. Jennings was not awarded compensation primarily because she did not establish that she suffered from many conditions she alleged the HPV vaccine caused her to suffer. Decision, issued July 8, 2020.

As the Vaccine Act permits, Ms. Jennings seeks an award of attorneys' fees and costs. She is awarded $62,738.17.

---

[*] The parties were informed that this decision would be made available to the public. Ms. Jennings sought redaction of this decision, but her motions were denied. Orders, issued Oct. 19, 2020 and Sep. 15, 2020. After Ms. Jennings requested that the Court of Federal Claims review the orders denying redaction, the Court denied the motion for review. Order, issued Feb. 8, 2021. Accordingly, this decision is being posted as originally submitted, except for modification to this footnote.

## I. Procedural History

Ms. Jennings's case proceeded through two distinct phases. The first concerns her claim that she was entitled to compensation. The second concerns her motion for attorneys' fees and costs.

### A. Entitlement Phase

Ms. Jennings began this case by filing a petition on June 30, 2016.[1] As part of the response to the petition, the undersigned issued an order regarding attorneys' fees. Order, issued July 7, 2016. She filed a collection of medical records. Petitioner periodically filed medical records and other documents over the next six months.

The Secretary reviewed the submitted material and summarized the medical records. Resp't's Rep., filed May 1, 2017, at 2-8. After reviewing the standards for entitlement, the Secretary argued that petitioner had not established that Ms. Jennings was entitled to compensation. The Secretary "disputes that petitioner has demonstrated that vaccine-related injury." Id. at 9. The Secretary indicated that neither a treating doctor nor a retained expert offered any theory to explain how a vaccine caused Ms. Jennings's injury. Id. The Secretary also disputed the temporality in that some symptoms occurred before the vaccination and some diagnoses occurred months after the vaccination. Id. at 11.

The undersigned proposed a set of instructions for the expert, which later became final. Order, issued Aug. 2, 2017. The instructions directed the way experts for petitioners were to prepare invoices for their work.

Petitioner filed an amended petition. The amended petition alleges that Danielle Jennings "continues to suffer from a toxic reaction to the vaccinations as identified above." Am. Pet., filed June 21, 2017, ¶ 11. The amended petition does not specify a particular disease or condition that the vaccinations allegedly caused. However, the amended petition does assert that after the vaccinations, Ms. Jennings experienced "hand numbness, headaches, handwriting difficulties, visual

---

[1] Initially, Denise Jennings, the mother of Danielle Jennings, acted as petitioner because Danielle had not reached the age of majority. However, Danielle eventually became the petitioner. Order, issued Aug. 23, 2018. Whether Denise Jennings or Danielle Jennings was the petitioner does not affect the outcome.

comprehension difficulties" as well as "memory impairments and neurologic impairments." Id. ¶¶ 9-10.

Petitioner filed the first report from Dr. Santoro on May 29, 2018. Exhibit 26. This report did not comply with the August 2, 2017 Expert Instructions. For example, Dr. Santoro did not define the condition that was affecting Danielle. Consequently, petitioner was ordered to obtain a supplemental report. Order, issued June 25, 2018.

This supplemental report from Dr. Santoro was filed on August 23, 2018. Exhibit 27. Dr. Santoro, again, did not reach a conclusion about Danielle's diagnosis. Order, issued Sept. 17, 2018. The Secretary intended to file an expert report in response.

After similarly receiving multiple enlargements of time, the Secretary filed a report from Dr. MacGinnitie on February 14, 2019. Exhibit A. Dr. MacGinnitie challenged many aspects of Dr. Santoro's opinion, including the lack of diagnosis. Id. at 4-5, 9.

Petitioner's response to Dr. MacGinnitie's report took place in two forms. Denise Jennings challenged some of Dr. MacGinnitie's factual assertions in an affidavit. Exhibit 39. Dr. Santoro disputed some of Dr. MacGinnitie's medical opinions in two more reports. Exhibits 40-41.

The Secretary filed another report from Dr. MacGinnitie on September 10, 2019. Exhibit P.[2] The parties were directed to file briefs regarding entitlement. Order, issued Sept. 25, 2019. This order allowed the parties to file a limited amount of additional information, including updated medical records for Danielle.

Petitioner filed her brief with additional evidence on March 4, 2020. Exhibits 42-53. The Secretary filed his brief on March 27, 2020. The Secretary, too, filed additional evidence. Exhibits U-Z.

The undersigned found that Ms. Jennings was not entitled to compensation. On the claims that the HPV vaccination caused her to suffer allergies, chronic fatigue syndrome, and a gastrointestinal illness, Ms. Jennings had not established that she suffered from any of these. This lack of proof regarding an appropriate diagnosis prevented Ms. Jennings from receiving compensation. See Lombardi v.

---

[2] The Secretary also designated another document as exhibit P, a disciplinary action against Dr. Neuenschwander, that was filed on July 15, 2019.

3

Sec'y of Health & Human Servs., 656 F.3d 1343, 1353 (Fed. Cir. 2011). For another condition that Ms. Jennings did suffer, asthma and breathing difficulties, Ms. Jennings did not receive compensation because the medical records showed that she suffered those problems before receiving the vaccination. Thus, the vaccination could not have caused Ms. Jennings to suffer asthma and breathing problems. See Locane v. Sec'y of Health & Human Servs., 685 F.3d 1375, 1380-81 (Fed. Cir. 2012). After the time for filing a motion for review lapsed, judgment entered on August 10, 2020.

### B. Attorneys' Fees and Costs Phase

Ms. Jennings requested attorneys' fees and costs. To establish her eligibility, Ms. Jennings argued that reasonable basis supported her claim in that that she "received a vaccination that, within a short time thereof, caused her to develop injuries as set forth in the Petition and medical records." Pet'r's Mot., filed July 22, 2020, ¶ 3. Ms. Jennings did not discuss the July 8, 2020 decision, which found that Ms. Jennings did not develop the injuries as set forth in her amended petition.

The Secretary stated that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Resp't's Resp., filed July 23, 2020, at 2. However, the Secretary, too, did not explain how the statutory requirements are met and did not address the July 8, 2020 decision. With respect to the amount of attorneys' fees and costs, the Secretary filed his standard response in which he deferred to the special master.

Given that neither party discussed the findings in the July 8, 2020 decision that Ms. Jennings did not suffer from the conditions for which she claimed compensation, the undersigned directed the parties to file supplemental briefs regarding reasonable basis. The undersigned also encouraged petitioner to develop evidence regarding the amount Dr. Santoro had requested. Order, issued July 23, 2020. During this time, the Federal Circuit issued Cottingham v. Sec'y of Health & Human Servs., 971 F.3d 1337 (Fed. Cir. 2020). Thus, the parties were directed to discuss this new precedent. Order, issued August 25, 2020.

Ms. Jennings filed a supplemental brief. Over the course of approximately ten pages, she argued that the claims regarding asthma, chronic fatigue syndrome, and gastrointestinal disease were reasonable. Pet'r's Supp'l Br., filed Sep. 23, 2020, at 4-10. Ms. Jennings also presented four exhibits of which one reproduced a special master's decision.

4

The Secretary's response, which was filed the next day, did not discuss any of the facts of Ms. Jennings's medical history, although the Secretary did set out the procedural history in one paragraph. Resp't's Resp., filed Sept. 24, 2020. In conclusion, the Secretary stated: "Respondent defers to the Special Master to determine whether the record evidence as a whole in this particular case, in light of Vaccine Program precedent, supports the conclusion that petitioner's claim had a reasonable basis." Id. at 4. The Secretary did not explain a shift in position. Previously, he previously had stated that he was satisfied that Ms. Jennings had met her burden. See Resp't's Resp., filed July 23, 2020, at 2.

Citing Penson v. Ohio, 488 U.S. 75, 84 (1988); Mote v. Wilke, 976 F.3d 1337, 1346 (Fed. Cir. 2020); and McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018), the undersigned directed the Secretary "to take a position regarding whether 'there was a reasonable basis for the claim for which the petition was brought.'" Order, issued Sep. 28, 2020, at 3, quoting 42 U.S.C. § 300aa–15(e). The undersigned explained that a "discussion of the evidence (not a recitation of the law) would encompass at least five pages." Id.

The Secretary declined to discuss the evidence. Instead, the Secretary maintained "Respondent has again reviewed the objective evidence, and again states in this response that he does not object to an award of attorneys' fees and costs due to a lack of reasonable basis." Resp't's Resp., filed Oct. 15, 2020, at 7. The Secretary also "defers to the discretion of the Special Master – as the adjudicator of the question at issue here under Section 15(e) of the Act – to determine whether, in his view, the objective evidence based on the totality of the circumstances supports a conclusion that petitioner's claim had a reasonable basis, and, if so, to award reasonable attorneys' fees and costs." Id. at 8.

Ms. Jennings has not filed a reply. However, Ms. Jennings stated that Dr. Santoro died in October 2020. Pet'r's Status Rep. filed Oct. 19, 2020. Nonetheless, Ms. Jennings provided additional information regarding the reasonableness of the amount requested for Dr. Santoro. Pet'r's Status Rep., filed Dec. 3, 2020. In response from inquiries from the undersigned, Ms. Jennings provided additional information about the costs she is requesting. Exhibits 54-56.

With these submissions, Ms. Jennings's motion is ready for adjudication. Her motion presents two issues: whether she is eligible for an award of attorneys' fees and costs and, if so, what is the reasonable amount of attorneys' fees and costs.

5

## II.     Eligibility for Attorneys' Fees and Costs

Even though compensation was denied, a petitioner who brings a petition in good faith and who has a reasonable basis for the petition may be awarded attorneys' fees and costs. See 42 U.S.C. § 300aa–15(e)(1). "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Resp't's Resp., filed July 23, 2020, at 2. When directed to comment on this position, the Secretary confirmed that "he does not object to an award of attorneys' fees and costs due to a lack of reasonable basis." Resp't's Resp., filed Oct. 15, 2020, at 7. Thus, due to the lack of objection from the Secretary, the undersigned finds that petitioner is eligible for an award of attorneys' fees and costs. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

## III.    Reasonable Amount of Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. The undersigned has assessed the material submitted in the fee application. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

### A.    Reasonable Hourly Rate

For Mr. Rooney's initial work, Ms. Jennings proposes that a reasonable rate of compensation is $300 per hour. For work in 2017, the rate increases to $350 per hour. There is another increase in 2020 to $380 per hour. Pet'r's Mot. at 1.

Special masters have accepted $300 per hour as a reasonable hourly rate for Mr. Rooney's work in 2018, and thereafter increased it to $350 per hour. Thomas v. Sec'y of Health & Human Servs., No. 14-966V, 2018 WL 5725184 (Fed. Cl. Spec. Mstr. Oct. 5, 2018). The increase from $350 per hour in 2018 to $380 per hour in 2020 is reasonable.

6

## B. Reasonable Number of Hours

While most entries in Mr. Rooney's timesheets are adequate and reasonable, many are not. Examples of vague and poorly expressed activities include:

| Date | | Activity | Hours | Amount |
|---|---|---|---|---|
| 8/16/2017 | SWR | Email correspondence | 0.10 | $30.00 |
| 6/6/2019 | SWR | Email correspondence with client | 0.10 | $35.00 |
| 5/26/2020 | SWR | Telephone conference with client | 0.50 | $190.00 |
| 7/10/2020 | SWR | Telephone conference with expert; conference with client; review court rules; modify decision | 3.00 | $1,05.00 |

As explained early in this case, even an attorney's communication with a client should have some detail to assess its reasonableness. Order, issued July 7, 2016, citing Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011).[3]

In some entries, either Mr. Rooney or his paralegal charged for filing documents. See, e.g., entries for 7/5/2016; 7/13/2016; 9/11/2017; 1/15/2018; 8/30/2019; and 10/5/2019. Filing documents is a clerical task for which attorneys should not charge. See Guerrero v. Sec'y of Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), mot. for rev. den'd in relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016).

Mr. Rooney appears to have spent an unusually lengthy amount of time researching medical articles. While attorneys may legitimately perform some basic legal and medical research at the beginning of the case, an attorney should not displace the work of an expert. See K.G. v. Sec'y of Health & Human Servs., No. 18-120V, 2020 WL 3495990, at *6 (Fed. Cl. May 21, 2020) (stating "reduction is necessary to account for time spent performing medical research" and citing cases). Here, even after Dr. Santoro was participating in the case, Mr. Rooney researched medical articles. See entries for 8/29/2019; 10/23/2019.

---

[3] The July 10, 2020 entry suffers from block billing in that determining how much of the three hours was spent in communicating with the expert, conferring with the client, reviewing the Court's rules, or modifying the decision is not clear.

7

To account for these issues, $3,000 is reduced from the attorneys' fees invoice. See Fox v. Vice, 563 U.S. 836, 838 (2011) (indicating that trial courts may use "rough justice" in awarding attorneys' fees). Consequently, a reasonable amount of attorneys' fees is $50,075.50.[4]

## C. Costs

For the costs advanced by her attorney, Ms. Jennings requests $21,114.04.[5] Pet'r's Mot. ¶ 7. She also requests reimbursement of costs that her parents advanced in the amount of $536.13. Id. ¶ 12, citing fee exhibit 2. The latter expenses for the collection of medical records are reasonable and adequately, if imperfectly, documented. Exhibits 54, 56.[6]

Similarly, some of the expenses incurred by Mr. Rooney are routine expenses associated with gathering medical records, mailing materials, and filing the petition. These costs are reasonable and awarded.

The majority of expenses concern the costs for two experts, David Axelrod and John Santoro. Pet'r's Mot. at 2. Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013).

Dr. Axelrod has requested compensation for $4,100.00, representing 10.25 hours at a rate of $400 per hour. While Dr. Axelrod did not state the date on which he performed the work, Mr. Rooney's timesheets show that he began consulting with unidentified experts by August 24, 2017. Pet'r's Mot. at 11. Mr. Rooney's

---

[4] Petitioner appears to have requested inconsistent amounts for attorneys' fees. In the motion (paragraph 4), petitioner sought $53,075.50. Yet, the timesheets suggest a slightly larger amount, $53,177.50. The undersigned uses the former figure because it more closely matches the undersigned's computation of the charges listed in the timesheets.

[5] Again, there is a discrepancy within petitioner's submission. The invoice for itemized cost shows the total as $21,114.04. However, petitioner's motion (paragraph 5) claimed $26,106.04. The former figure appears accurate.

[6] Petitioner submitted the documents supporting the request for costs only after an informal inquiry from the undersigned's chambers. The documents do not match the items requested in costs exactly. However, the amount substantiated by documents ($562.18) is nearly the same as the amount requested in the motion.

8

list of costs includes an entry for payment to Dr. Axelrod on May 18, 2018 for $4,100. Id. at 21.

Dr. Axelrod has not submitted a report in this case and Ms. Jennings has not explained why she consulted him. On the other hand, the Secretary did not raise any objection to compensating Ms. Jennings for work Dr. Axelrod performed.

Dr. Axelrod's proposed rate of compensation ($400 per hour) is reasonable. See Gonzalez v. Sec'y of Health & Human Servs., No. 14-1072V, 2015 WL 10435023, at *17 (Fed. Cl. Spec. Mstr. Nov. 10, 2015) (awarding $450/hr. to Dr. Axelrod for work performed in the case); see also Abbott v. Sec'y of Health & Human Servs., 150 Fed. Cl. 241 (2020) (listing factors to consider in evaluating the hourly rate for an expert).

However, the information provided does not justify the request for 10.25 hours. Dr. Axelrod's invoice shows he spent 6.25 hours on "chart review" and 1 hour on "research." These entries are reasonable, although Dr. Axelrod should have described his activities with more detail. Dr. Axelrod's final entry is 3 hours for "Discussion of Report." Pet'r's Mot. at 26. Three hours to discuss a report, which seems not to have been written, appears excessive. The unusualness of the amount of time seems corroborated in Mr. Rooney's parallel entry. On April 22, 2018, Mr. Rooney spent less than one-hour (0.8 hour to be precise) in a "telephone conference with expert." Pet'r's Mot. at 12. Consequently, Dr. Axelrod's entry is reduced from three hours to one hour, causing a reduction of $800.00.

Apparently, after Dr. Axelrod did not present a useful report, Mr. Rooney turned to Dr. Santoro. Pet'r's Mot. at 12 (entry for April 23, 2018). Dr. Santoro wrote four reports: exhibit 26 (dated May 27, 2018), exhibit 27 (dated Aug. 21, 2018), exhibit 40 (dated June 4, 2019), and exhibit 41 (dated Aug. 30, 2019).

Initially, Ms. Jennings submitted one invoice from Dr. Santoro, dated June 3, 2018, which lists activities associated with Dr. Santoro's first report. Pet'r's Mot. at 27; see also id. at 20-22 (Mr. Rooney's list of costs including only a single payment to Dr. Santoro). Dr. Santoro has requested compensation for $16,000, representing 32 hours at $500 per hour. However, after an informal inquiry from chambers regarding documentation supporting the costs incurred by Ms. Jennings's parents (see note, 6, above), Ms. Jennings added two more invoices from Dr. Santoro. Exhibit 55. Through these two additional invoices, Dr. Santoro has sought an additional $9,500, representing 19 more hours of work at $500 per hour.

9

The reasonableness of neither the proposed hourly rate nor the number of hours has been persuasively demonstrated. With respect to the proposed hourly rate, Dr. Santoro described himself as a "board certified internist and gastrointestinal physician." Exhibit 26 at 1. He specialized in treating patients with inflammatory bowel disease, meaning Crohn's disease and ulcerative colitis. Id.; but see exhibit 27 at 1 (Dr. Santoro's supplemental report asserting that he treated patients with "reactive airway disease, headaches, fatigue, chronic fatigue syndrome, epilepsy, digestive condition and depression"). While some experts with these qualifications might warrant compensation at $500 per hour, Dr. Santoro does not, *in this case*, for two reasons.

First, Dr. Santoro's area of specialization (inflammatory bowel disease) does not match Ms. Jennings's case. No evidence suggests that any doctor diagnosed Ms. Jennings with inflammatory bowel disease and Ms. Jennings did not claim that the vaccination caused her inflammatory bowel disease. On the other hand, Ms. Jennings more generally asserted that she suffered from gastrointestinal disease. Pet'r's Entitlement Br., filed March 4, 2020, at 25, 35. While this might be Ms. Jennings's claim, no persuasive evidence shows Ms. Jennings suffered any gastrointestinal illness. "Ms. Jennings has not identified any treating doctors who diagnosed her with any gastrointestinal disease. It appears that none of the doctors who treated Ms. Jennings referred her to a gastroenterologist and there are no records from a gastroenterologist who treated her." Decision, issued July 8, 2020, at 25.[7]

Second, Dr. Santoro's work simply was not good. An appropriate rate for an expert also depends, in part, on "the nature, quality, and complexity of the information provided." Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009).

Dr. Santoro's reports contained many deficiencies. But, the fundamental problem is the lack of support for any diagnosis in Ms. Jennings. The Secretary alerted Ms. Jennings to this problem before she retained Dr. Santoro. See Resp't's Rep., filed May 1, 2017, at 9. Dr. Santoro, in turn, reviewed the Secretary's report before he wrote his first report. Exhibit 26 at 1. The August 2, 2017 Instructions for expert witnesses directed any expert to identify the relevant disease or

---

[7] The basis for Dr. Santoro's opinion that Ms. Jennings suffered a gastrointestinal illness appears to be an affidavit from Ms. Jennings's mother. But, Dr. Santoro did not explain how an affidavit in the absence of any reports to medical doctors and/or any medical testing can ground a medical diagnosis.

condition. Order ¶ 4. Dr. Santoro should have been familiar with these Instructions before he wrote his report.

Despite these notices, Dr. Santoro did not come close to presenting a credible case for any of Ms. Jennings's proposed diagnosis. The weakness in Dr. Santoro's opinion contributed to a decision being entered against her without a hearing.

Accordingly, for Dr. Santoro's work in this case, a reasonable rate of compensation is $250 per hour. The undersigned recognizes that in other cases in which Dr. Santoro's expertise more closely aligns with the relevant subject and in which Dr. Santoro presents more credible opinions, his work might merit a higher hourly rate.

As for the other component of an expert's compensation, a reasonable number of hours, Dr. Santoro's presentation is lacking again. "Again," refers to the prior decisions finding Dr. Santoro's "billing records are problematically vague and block billed." Morris v. Sec'y of Health & Human Servs., No. 17-165V, 2020 WL 3960338, at *2 (Fed. Cl. Spec. Mstr. May 28, 2020) (citing cases). Before Dr. Santoro began working on this case, Ms. Jennings and Dr. Santoro were notified about the expected content of the invoices. "The expert should list separate tasks separately. A rule of thumb is that every half hour should have a separate task, differentiated from other tasks." Instructions at 8.

Dr. Santoro failed to detail what he was doing. For example, he has charged $3,500 (or 7 hours of work) for a "Retainer Initial Case Review and Case Conference / Record Review." The next entry is 10 hours for "Case Records Comprehensive Review." Thus, it appears that Dr. Santoro spent approximately 17 hours reviewing medical records. This much time is nearly *triple* the amount of time Dr. Axelrod spent.

From the undersigned's experience in reviewing applications for attorneys' fees and costs generally and from the undersigned's specific experience in reviewing Ms. Jennings's medical records, the undersigned is confident in stating that 17 hours to review medical records in this case is excessive. Consequently, the number of hours for Dr. Santoro's review of medical records is reduced to the number of hours for Dr. Axelrod's review of medical records (6.25).[8]

---

[8] Dr. Axelrod's charge of 6.25 hours also seems to be high for the number of records in this case. But, it is not shockingly high and within the upper bounds of reasonableness.

11

Dr. Santoro's next entry is for 12 hours to review medical literature. It would seem that if Dr. Santoro were an expert in the fields in which he was opining, then 12 hours for research might be excessive. However, Dr. Santoro's hourly rate has been reduced due to his lack of expertise in the relevant field. Thus, 12 hours at a reduced rate is a reasonable amount of time.

Dr. Santoro's final two entries in his first invoice are for preparing, correcting, and revising his report ($1,000 (or two hours)) and phone conferences before and after his letter ($500 (or one hour)). These entries are reasonable. Accordingly, a reasonable amount of time for Dr. Santoro to prepare his first report is 21.25 hours.

In Dr. Santoro's second invoice, he has multiple unreasonable entries. Dr. Santoro states that he spent 5 hours on a "comprehensive repeat review" of the medical records. Exhibit 55 at 3 (invoice dated Sep. 8, 2018). While most experts do not charge for a "repeat review" at all, the undersigned will allot one-half hour for this task. Dr. Santoro has also charged 4 hours for discussing the case. Four hours of discussion between an attorney and an expert seems to be beyond what normally happens and Mr. Rooney's timesheet shows that around this time, Mr. Rooney spent less than a half an hour on two calls with Dr. Santoro. Due to the discrepancy between billing records of Mr. Rooney and Dr. Santoro, Dr. Santoro's charge for phone consultation is reduced to 1 hour. Dr. Santoro has also charged two hours for preparing, revising, and emailing his supplemental report. This charge is reasonable. Thus, a reasonable amount of time associated with Dr. Santoro's second invoice is 3.5 hours (0.5 + 1.0 + 2.0).

Dr. Santoro dated his third invoice July 22, 2020. It seeks compensation for an additional 7 hours of work. Because Dr. Santoro neglected to provide the date of his activities, determining when he performed the work is difficult. It appears that these entries might concern the preparation of Dr. Santoro's report approximately one year earlier. Exhibit 41 (report dated Aug. 30, 2019). While some of the entries in the third invoice seem to be near the higher bound of reasonableness, the only entry that is excessively unreasonable is time spent again reviewing the medical records. This time is again reduced to 0.5 hours, resulting in a removal of 0.5 hours. Therefore, for Dr. Santoro's third invoice a reasonable amount of time is 6.5 hours.

In sum, a reasonable amount of time for Dr. Santoro's work in this case is 31.25 hours (21.25 + 3.5 + 6.5). Given the finding that a reasonable hourly rate for Dr. Santoro is $250, a reasonable amount of compensation for Dr. Santoro is $7,812.50.

In sum, a reasonable amount of attorneys' fees is $12,126.54, consisting of $1,014.04 in miscellaneous costs, $3,300 for Dr. Axelrod, and $7,812.50 for Dr. Santoro. As previously mentioned, the costs that Denise Jennings incurred ($536.13) are also reasonable.

## IV. Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Ms. Jennings is awarded a total of $62,738.17. Of this amount, $62,202.04 (representing $50,075.50 in attorneys' fees and $12,126.54 in attorneys' costs) shall be paid as a lump sum in the form of a check jointly payable to petitioner and her attorney, Scott Rooney. In addition, $536.13 shall be paid as a lump sum in the form of a check payable to the former petitioner, Denise Jennings.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.